**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| MORAN FOODS, LLC<br>D/B/A SAVE-A-LOT, LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:24-cv-01514-JAR |
| | ) |
| MUHAMMAD BABAR CHAUDHRY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Muhammad Babar Chaudhry's motion to

dismiss Plaintiff Moran Foods, LLC's complaint for lack of personal jurisdiction and improper

venue [ECF No. 46]. Plaintiff filed a response in opposition to Defendant's motion to dismiss

[ECF No. 47], and Defendant filed a reply [ECF No. 48]. Defendant also filed a motion to stay

discovery pending ruling on motion to dismiss [ECF No. 49], to which Plaintiff filed a response

in opposition [ECF No. 50]. Upon consideration of the arguments of each party and the

applicable law, the Court holds that it has personal jurisdiction over Defendant and venue is

proper. Therefore, the Court will deny Defendant's motion to dismiss, and will deny Defendant's

motion to stay discovery as moot.

**BACKGROUND**

Plaintiff, incorporated and headquartered in Missouri, is a discount grocery chain that

operates under the brand name Save-A-Lot. Plaintiff has license and supply agreements with

more than 100 retail partners which operate under the Save-A-Lot brand throughout the United

States, including in Missouri. The license and supply agreements allow retail partners to operate

1

Save-A-Lot stores on the condition that they adhere to certain terms, such as purchasing inventory from Plaintiff.

Plaintiff alleges that in August 2024, Defendant ordered a former employee to send repeated emails from "ken.thomson6520@gmail.com" to nearly 500 representatives of Plaintiff's retail partners, claiming that Plaintiff was discussing filing for bankruptcy protection. The emails hinted that the sender had insider information about Plaintiff, and they urged retail partners to act to mitigate the potential effects of Plaintiff's imminent bankruptcy. Plaintiff asserts that this implication of insolvency is untrue, and they allege that since the emails were sent, there has been a greater rate of retail partners requesting to close stores and of suppliers halting shipments and resisting extending terms. At least one retail partner that received the August emails cited solvency concerns as the reason it breached its license and supply agreement with Plaintiff. Plaintiff also asserts that employees of one of its competitors contacted retail partners and repeated the claims alleged in the August emails. Plaintiff contends that they spent many hours investigating the emails, reassuring retail partners, negotiating new terms with suppliers, addressing shipment holds, sending a cease and desist letter to its competitor, and suing a retail partner for breaches of its license and supply agreements.

The identity of Defendant was unknown at the time Plaintiff filed its initial complaint in November 2024. However, upon conducting an internet search for "Ken Thomson," Plaintiff found information suggesting the individual who sent the emails lived in Ohio. After filing the initial complaint, Plaintiff continued to search for Defendant's identity through varying means.

In August 2025, an indictment was unsealed which revealed Defendant's identity and criminally charged Defendant with wire fraud in connection with the August 2024 emails. That same month, the United States sought Defendant's pretrial detention. Defendant was arrested in

Michigan and sent to a jail in Missouri to await trial. In September 2025, Plaintiff submitted an amended complaint that identified Defendant. The amended complaint also alleged that Defendant was the owner and sole member of one of Plaintiff's former retail partners. While Defendant was in a Missouri jail awaiting trial on the criminal charges, Plaintiff served Defendant in connection with the instant civil action before the Court. In the amended complaint, Plaintiff asserts that this Court has jurisdiction based on diversity of state citizenship and because Defendant committed tortious acts within Missouri by defaming Plaintiff and interfering with its contracts, knowing that such acts were likely to cause harm to Plaintiff in Missouri. Plaintiff states that venue is proper because a substantial amount of the conduct that is the subject of this action occurred in the Eastern District of Missouri.

In December 2025, Defendant filed a motion to dismiss Plaintiff's complaint for lack of personal jurisdiction and improper venue. Defendant alleges that he lacks minimum contacts with Missouri, that the *Calder* "effects test" for intentional torts is not satisfied, and that Plaintiff failed to plead sufficient facts to establish jurisdiction. Defendant also argues that venue is improper under 28 U.S.C. § 1391(b)(2). In December 2025, Plaintiff filed a memorandum in opposition to Defendant's motion to dismiss. Plaintiff asserts an additional basis for personal jurisdiction in the memorandum: that Defendant was personally served with process while detained in Missouri and awaiting trial. Plaintiff filed a reply. In March 2026, Defendant filed a motion to stay discovery pending ruling on motion to dismiss. Plaintiff filed a response in opposition to the motion to stay. The issues are fully briefed and the Court is prepared to rule.

### LEGAL STANDARD

For a complaint to survive a motion to dismiss for lack of personal jurisdiction, sufficient facts must be pled to make a prima facie showing that supports "a reasonable inference that the

3

defendant can be subjected to jurisdiction within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011).[1] The evidentiary showing at the prima facie stage is minimal, and the evidence must be viewed in the light most favorable to the plaintiff. *Id.* at 592. The Court must also "resolve factual conflicts in the plaintiff's favor." *R&R Propane, LLC v. Tiger Payment Sols., LLC*, 756 F.Supp.3d 734, 740 (E.D. Mo. 2024). Conclusory allegations, however, are insufficient to serve as a basis for jurisdiction if no other allegations provide plausible factual support. *Zeavision, LLC v. Bausch & Lomb Inc.*, No. 4:21-CV-1487-HEA, 2022 WL 17092453, at *3 (E.D. Mo. Nov. 21, 2022) (citing *Brothers and Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022).

## ANALYSIS

### I.     Transient Jurisdiction Based on Personal Service of Process

Defendant argues that personal service of process in Missouri does not establish personal jurisdiction because Defendant's presence in Missouri is involuntary. Defendant points out that the U.S. Supreme Court's major transient (or tag) jurisdiction case, *Burnham v. Superior Court of California*, 495 U.S. 604 (1990), did not produce a majority opinion, so "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). Defendant contends that the narrowest position is expressed in Justice Brennan's concurrence, which stated that "the Due Process Clause of the Fourteenth Amendment generally permits a state court to exercise jurisdiction over a defendant if he is served with process while *voluntarily present* in the forum State." *Burnham*, 495 U.S. at 628-29 (Brennan, J., concurring in judgment) (emphasis added).

---

[1] Throughout this order, quotations have been cleaned up and internal citations are omitted unless otherwise noted.

Defendant maintains that the facts in *Burnham* are entirely distinct from this case. In *Burnham*, the defendant was served in California in the course of voluntary travel. *Id*. at 608. By contrast, Defendant in this action was initially arrested in Michigan, transferred to Missouri where he was served, and is still being detained in the state against his will.

Plaintiff, on the other hand, contends that in-forum personal service of process is dispositive. Heeding the language of Justice Scalia's lead plurality opinion in *Burnham*, Plaintiff asserts that it is settled law that a court may exercise personal jurisdiction over a natural person who is personally served with process while physically present in the forum state. *See id*. at 610 ("Among the most firmly established principles of personal jurisdiction in American tradition is that the courts of a State have jurisdiction over nonresidents who are physically present in the State."). Moreover, Plaintiff argues that Defendant's involuntary presence in Missouri does not modify the assessment; it is unaware of any Missouri cases that provide an exception based on involuntary presence. *See, e.g., State ex rel. Nixon v. Rues*, 304 S.W.3d 206, 208 (Mo. App. W.D. 2009) (exercising personal jurisdiction where defendant was "properly served while in a Missouri correctional facility"). Plaintiff also posits that even if there was an exception, it would apply only if Plaintiff's presence when personally served in Missouri was unrelated to the underlying action. But here, Plaintiff's presence is clearly related because Plaintiff is incarcerated in Missouri as part of a prosecution premised on the same conduct at issue in this civil action.

The Court finds that it has personal jurisdiction over Defendant based on personal service of process while Defendant was physically present in Missouri as a result of the same activities that prompted the complaint in this action. Defendant contends that Justice Brennan's concurring opinion in *Burnham* is controlling law because it explicates the narrowest grounds for

the judgment. But even if the Court accepts that proposition, Justice Brennan's concurrence does not establish Defendant's asserted conclusion, as the concurrence does not state that voluntary presence is a requirement for transitory jurisdiction. Rather, it only expresses that "there may be cases in which a defendant's involuntary or unknowing presence in a State does not support the exercise of personal jurisdiction over him." *Burnham*, 495 U.S. at 637 n.11 (Brennan, J., concurring in judgment). It further states that there was no need in that case to "determine the outer limits of the transient jurisdiction rule." *Id*. Thus, while the concurrence acknowledges that it is possible that involuntary presence may not support personal jurisdiction in certain circumstances, it does not take a firm stance on the issue. Accordingly, *Burnham* cannot serve as the basis for the proposition that voluntary presence is required for transient jurisdiction.

The Court's finding of personal jurisdiction is further supported by subsequent federal case law. *See, e.g., C.S.B. Commodities, Inc. v. Urb. Trend (HK) Ltd.*, 626 F.Supp.2d 837, 846-47 (N.D. Ill. 2009) ("Since *Burnham* was decided, there does not appear to be a single published opinion in which a court has found jurisdiction lacking where an individual was served in the forum. This court sees no reason to break from that apparently unbroken line of precedent."); *Santa Escolastica, Inc. v. Pavlovsky*, 736 F.Supp.2d 1077, 1081-82 (E.D. Ky. 2010) ("*Burnham* clearly endorses the validity of jurisdiction via personal service"); *Jose Gallego v. Gallego Garcia*, No. 07CV1185-MMA (LSP), 2008 WL 11508690, at *4 (S.D. Cal. Dec. 23, 2008) ("Given that the Defendant was personally served within the State, the Court has personal jurisdiction over the Defendant."); *Jaramillo v. Naranjo*, No. 10-21951-CIV, 2014 WL 4898210, at *5 (S.D. Fla. Sept. 30, 2014) ("[W]here *Burnham* remains good law (at least for now), Defendant has no basis to challenge tag jurisdiction over him and we are bound by *Burnham* to apply it in this case.").

Notably, in finding that in-forum personal service alone satisfied due process, the district court in *C.S.B. Commodities* included as a factor that the defendant "was served while in the forum solely for the activities leading to the complaint." 626 F.Supp.2d at 847. Here, Plaintiff's complaint firmly establishes that Defendant was charged and arrested in Michigan and transferred to Missouri for detention due to the same activities leading to Plaintiff's complaint. According to Plaintiff's complaint, the motion filed by the United States seeking Defendant's pretrial detention makes note of the emails Defendant had sent to Plaintiff's retail partners. ECF No. 38 at 5-6.

Even under Justice Brennan's approach in *Burnham*, the exercise of personal jurisdiction over Defendant comports with due process. Justice Brennan would "undertake an independent inquiry" regarding the "fairness" of the in-forum service. *Burnham*, 495 U.S. at 629 (Brennan, J., concurring in judgment). Other factors for consideration noted in Justice Brennan's concurrence include "traditional notions of fair play and substantial justice" as well as "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Id*. at 633 n.7. Given the allegations of Plaintiff's complaint and the fact that Defendant's presence in Missouri is due to criminal charges that directly relate to the activities described in the complaint, the Court's exercise of personal jurisdiction over Defendant accords with traditional notions of fair play and substantial justice and satisfies each of the other factors listed by Justice Brennan.[2]

Relatedly, the Court finds that process immunity is inapplicable here. It has long been recognized that some parties temporarily in the forum state enjoy immunity from service by

---

[2] Although the Court finds it has personal jurisdiction over Defendant because of in-forum personal service where Defendant was present in Missouri due to the same activities that led to Plaintiff's complaint, additional due process analysis is conducted in the next section.

virtue of their status as participants in ongoing litigation. In *Lamb v. Schmitt*, 285 U.S. 222 (1932), the Supreme Court noted that "the due administration of justice requires that a court shall not permit interference with the progress of a cause pending before it, by the service of process in other suits, which would prevent, or the fear of which might tend to discourage, the voluntary attendance of those whose presence is necessary or convenient to the judicial administration in the pending litigation." *Id*. at 225. Importantly, this privilege exists for the convenience of district courts in the exercise of judicial administration, rather than to protect the individual seeking to avoid service of process. Courts maintain discretion to confer or deny immunity in such circumstances. *Id*. The extension of the privilege has been limited by the majority of courts to cases in which the party or witness was participating in an unrelated litigation at the time that he was served with process in the forum state. *See, e.g., In re Fish & Neave*, 519 F.2d 116, 118 (8th Cir. 1975) ("The common law rule that those who come before a Court are immune from service of process in other suits does not apply to the matter before this Court since the process sought to be served is in connection with the matter for which the individuals are before the Court."); *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1460 (10th Cir. 1995) (denying process immunity where party was served with process in second lawsuit while attending deposition in first lawsuit alleging similar facts); *LaCroix v. American Horse Show Ass'n*, 853 F.Supp. 992, 994–95 (N.D. Ohio 1994) (applying *Lamb* and denying defendants' claim of entitlement to immunity based on appearance in forum state solely to contest personal jurisdiction).

Defendant has not requested process immunity. Rather than a specific request for immunity, Defendant has asked the Court to fashion a blanket rule precluding the exercise of personal jurisdiction whenever the served individual is not voluntarily present in the jurisdiction. The Court rejects this suggestion. Defendant was present in Missouri at the time of service due to

an ongoing criminal action that is related and that alleges the same conduct that forms the basis of the instant civil case. Defendant is thus not entitled to process immunity. *See In re Fish & Neave*, 519 F.2d at 118.

While not dispositive, Missouri case law also supports the Court's exercise of personal jurisdiction. As identified by Plaintiff, in *Rues*, the Missouri Court of Appeals affirmed the trial court's exercise of personal jurisdiction because the defendant was properly served while in a Missouri correctional facility. 304 S.W.3d at 208 (citing *Webb ex rel. J.C.W. v. Wyciskalla*, 275 S.W.3d 249, 252 (Mo. banc 2009) (confirming that "the power of the state courts to exercise jurisdiction over persons within the state . . . [is] unquestioned"). Defendant asserts that *Rues* does not resolve the federal due process question because it did not examine the issue of involuntary presence in the state. Here, however, the Court has concluded that it maintains personal jurisdiction over Defendant, as the in-forum personal service of process on Defendant in this case comports with due process. Importantly, the Court is not broadly holding that personal service of process on a defendant that is physically present but involuntarily in a forum state always accords with personal jurisdiction. Rather, the Court's ruling is limited to the unique circumstances of this action in which Defendant was physically present in Missouri as a result of the same activities leading to Plaintiff's complaint.

## II.     Long-Arm Statute and Due Process

As an alternative to its transient jurisdiction argument, Plaintiff contends that this Court has personal jurisdiction over Defendant pursuant to Missouri's long-arm statute and due process. "Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646

F.3d 589, 593 (8th Cir. 2011). To determine whether jurisdiction is proper under the Due Process

Clause, a court must consider whether a defendant has "certain minimum contacts with [the

forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play

and substantial justice.'" *Intl. Shoe Co. v. State of Wash., Off. of Unempl. Compen. and

Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

When making this determination, the focus is on the relationship between the defendant, the

forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). A "defendant's suit-

related conduct must create a substantial connection with the forum State." *Id.* at 284. To

evaluate the sufficiency of the defendant's contacts, courts consider, "(1) the nature and quality

of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of

action to the contacts; (4) the interest of the forum state in providing a forum for its residents;

and (5) [the] convenience of the parties." *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615,

619-20 (8th Cir. 2021). "The first three factors are of primary importance, while the fourth and

fifth factors carry less weight." *Id.* at 620.

When an intentional tort has been alleged, as is the case here, courts must refer to the

"effects test" first set out in *Calder v. Jones*, 465 U.S. 783 (1984). *Id. Calder* "held that personal

jurisdiction can exist over a nonresident defendant who commits an intentional tort when its

effect is felt primarily within the forum state." *Id.* In applying the *Calder* test, however, the

relationship of the defendant with the forum state must arise out of contacts the defendant

created, and the defendant's contacts must be with the forum state itself, not solely with people

who reside there. *Id.* In the Eighth Circuit, the *Calder* test is construed narrowly, and "absent

additional contacts, mere effects in the forum state are insufficient to confer personal

jurisdiction." *Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010).

10

Plaintiff argues that Missouri's long-arm statute is satisfied because it authorizes jurisdiction where a defendant transacts business, makes a contract, or commits a tortious act with actionable consequences in Missouri. *See* Mo. Rev. Stat. § 506.500. Plaintiff asserts that its allegations establish that Defendant formed and performed an ongoing commercial relationship with Plaintiff, a Missouri-based entity, and acceptance of the parties' contract occurred in Missouri. *See Casework, Inc. v. Hardwood Associates, Inc.*, 466 S.W.3d 622 (Mo. App. W.D. 2015). Moreover, Plaintiff states that Missouri's long-arm statute is satisfied where an out-of-state tort is alleged to have "foreseeable," actionable consequences in Missouri. *See Stifel, Nicolaus & Co., Inc. v. Sapient Cap., LLC*, No. 4:23-CV-00241-MTS, 2024 WL 1014069, at *3 (E.D. Mo. Mar. 8, 2024). Plaintiff alleges that Defendant caused defamatory emails to be disseminated to Plaintiff's network of retail partners, a network anchored by Plaintiff's Missouri headquarters and Missouri-centered contracting and supply arrangements. On these allegations, Plaintiff contends that the challenged conduct foreseeably produced actionable consequences in Missouri. Defendant does not challenge Plaintiff's assertion that Missouri's long-arm statute is satisfied and instead insists that due process must also be satisfied, which Defendant believes is lacking. The Court finds that based on Plaintiff's allegations, Missouri's long-arm statute is clearly satisfied. The Court's focus will thus turn to due process.

Defendant alleges that his conduct does not meaningfully connect him to Missouri, as the emails Defendant caused to be sent were disseminated to hundreds of people throughout the United States. Defendant asserts that the fact that Plaintiff is headquartered in Missouri, claims to have felt economic harm here, and has at least one store here out of hundreds is not enough to establish jurisdiction, as an injury to a resident of a state does not, by itself, constitute sufficient grounds for said state to claim jurisdiction.

11

In *Pederson*, a lawyer worked for a California company from a Minnesota office. The lawyer sued the company for fraud in federal court in Minnesota. He had received hundreds of telephone calls and emails from the California company in his Minnesota office. However, the Eighth Circuit stated, "when the only connection between the defendants and the forum state is the plaintiff himself, [calls, emails, and text messages] are not enough on their own. Because Pederson just happens to work and maintain an office in Minnesota, these contacts fit into the random, fortuitous, or attenuated category." *Pederson*, 951 F.3d at 980-81 (citing *Walden*, 571 U.S. at 285-86). The Eighth Circuit expanded on this reasoning in *Morningside Church,* holding that a district court in Missouri did not have jurisdiction over the defendants, who had directed letters and calls towards the plaintiffs,[3] in part because the "communications were directed at Missouri simply because [the plaintiffs] just happened to reside there." *Morningside Church,* 9 F.4th 620.

Notably, in *Johnson v. Arden*, 614 F.3d 785 (8th Cir. 2010), the Eighth Circuit affirmed dismissal for lack of personal jurisdiction over defendants who allegedly conspired to harm a Missouri corporation by posting defamatory statements online. In that case, the plaintiffs owned a cat breeding business in Missouri. *Id*. at 787. The defendants allegedly conspired to post defamatory statements online about the plaintiffs' business. *Id*. at 788. The plaintiffs sued the defendants in state court in Missouri, and the defendants removed the case to federal court. *Id*. at 787-88. One defendant, Heineman, was a Colorado cat breeder who had a limited business relationship with the plaintiffs years prior to the events in question. *Id*. at 788-89. She was willing to sell cats to people in every state, including Missouri, though she had never actually

---

[3] The plaintiffs in this case were a business headquartered in Missouri, a church headquartered in Missouri, and an individual domiciled in Missouri.

placed a cat with a Missouri family. *Id*. at 789. She contested the court's jurisdiction. Pursuant to the *Calder* "effects test," the court determined it lacked personal jurisdiction over Heineman because the plaintiffs "fail[ed] to show that Heineman uniquely or expressly aimed her statements at Missouri." *Id*. 796. The court noted that the "statements were aimed at the [plaintiffs]; the inclusion of 'Missouri' in the posting was incidental and not 'performed for the very purpose of having their consequences' felt in Missouri. There is no evidence that the www.ComplaintsBoard.com website specifically targets Missouri, or that the content of Heineman's alleged postings specifically targeted Missouri." *Id.*

The Court recognizes that the facts of the cases detailed above parallel the underlying facts of this action in several respects. However, the Court finds that the Eighth Circuit's decision in *Whaley v. Esebag*, 946 F.3d 447 (8th Cir. 2020) is most pertinent to the specific circumstances of this case. In *Whaley*, the plaintiffs sued defendants, a California resident and his California-based business, in the Western District of Arkansas, alleging violations of securities fraud and additional claims arising from parties' investment agreement. *Id*. at 449-50. The Eighth Circuit found that two in-person meetings in Arkansas that took place after the signing of the parties' agreement in conjunction with texts, emails, and phone calls between the plaintiffs and the defendants, as well as other factors, were critical to determining there was specific personal jurisdiction over one of the defendants.

Here, while there is less factual support for state contacts than in *Whaley*, the Court finds that Plaintiff's complaint contains sufficient factual allegations to establish specific personal jurisdiction. Plaintiff alleges that Defendant is a former retail partner and that it has been involved in extensive civil litigation with Defendant for breaches of various business agreements and related misconduct. ECF No. 38 at 3. Plaintiff further alleges that its business agreements

with retail partners, such as the one it had with Defendant, required the purchase of certain inventory from Plaintiff. *Id*. at 2. Specifically, the license and supply agreement Defendant entered into with Plaintiff indicates that Defendant maintained continuous business-related contacts with Missouri-based Plaintiff. It can further be reasonably inferred from the allegations of the complaint that as a retail partner of Plaintiff, Defendant purchased inventory from Missouri on a regular basis. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) ("A district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party.") These contacts with Plaintiff in conjunction with allegedly causing defamatory emails to be sent while knowing they were likely to cause consumer confusion and harm to Plaintiff in Missouri, which gave rise to the present lawsuit, are sufficient to satisfy the first three factors of the relevant jurisdictional test.[4] The fourth and fifth factors also support the exercise of specific personal jurisdiction,[5] as Missouri has an interest in providing a forum for companies headquartered in the state, and litigating in Missouri is convenient for Plaintiff. Defendant is physically present in Missouri pending trial on criminal charges, and thus it would not be inconvenient for Defendant to litigate in Missouri.

With respect to the *Calder* test, the Court finds that more than "mere effects in the forum state" are present here. *Johnson*, 614 F.3d at 797. Specifically, the additional contacts of Defendant's business relationship with Missouri-based Plaintiff and the requirement of purchasing inventory from Plaintiff under the license and supply agreement in combination with

---

[4] *Morningside Church*, 9 F.4th at 619 (the first three factors of the test are: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; [and] (3) the relation of the cause of action to the contacts").

[5] *Morningside Church*, 9 F.4th at 619 (these factors are: "(4) the interest of the forum state in providing a forum for its residents and (5) the convenience of the parties").

the harmful effects on Plaintiff in Missouri resulting from Defendant's alleged tortious actions are adequate to confer personal jurisdiction. Weighing all factors and the *Calder* test, the Court finds that it has specific personal jurisdiction over Defendant.

### III.    Venue

Defendant asserts that venue is improper under 28 U.S.C. § 1391(b)(2). Defendant contends that no substantial part of Defendant's relevant conduct occurred in the Eastern District of Missouri. Thus, Defendant argues that Plaintiff has not satisfied § 1391(b)(2), which requires that "a substantial part of the events or omissions giving rise to the claim occurred" in the relevant district. Rather, Defendant states that the only events Plaintiff alleges are that Defendant caused two emails to be sent and that the emails were disseminated widely to representatives of Plaintiff's retail partners, neither of which substantially occurred in the Eastern District of Missouri. Defendant also states that § 1391(b)(2) focuses on "relevant activities of the defendant, not of the plaintiff." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995). Since it is alleged that Defendant is an Ohio resident who did not actually commit the allegedly tortious acts within Missouri, Defendant believes venue in this District is improper.

In response, Plaintiff maintains that venue is proper because a substantial part of the events giving rise to the claims occurred in this District, including the injury to Plaintiff's Missouri-based business, the disruption of Missouri-centered commercial relationships, and the receipt and impact of Defendant's tortious communications. Plaintiff also argues that the locus of the injury is a critical venue consideration in tort actions. *See, e.g., Wieland v. John Rigby & Co. [Gunmakers], Inc.*, No. 4:09CV2100 JCH, 2010 WL 1528527, at *1 (E.D. Mo. Apr. 15, 2010); *Carney v. Guerbet, LLC*, No. 4:18-CV-1494 CAS, 2018 WL 6524003, at *7 (E.D. Mo. Dec. 12, 2018) (finding that the action could have been brought in the district "where plaintiff's injury

15

occurred, and therefore a substantial part of the events or omissions giving rise to the claim occurred there").

The Court finds that venue is proper pursuant to 28 U.S.C. § 1391(b)(2). Critically, Plaintiff has alleged that its injury occurred in this District, asserting that Defendant has committed tortious acts within Missouri by defaming Plaintiff and interfering with its contracts, knowing that such acts were likely to cause consumer confusion and harm to Plaintiff in Missouri. Furthermore, Plaintiff has alleged that its St. Ann, Missouri-based business was in fact harmed by Defendant's actions in the Eastern District of Missouri. The Eighth Circuit's instruction in *Woodke* that § 1391(b)(2) focuses on "relevant activities of the defendant, not of the plaintiff," 70 F.3d at 985, is therefore also satisfied because Plaintiff has alleged that Defendant acted within Missouri by causing defamatory emails to be sent that were intended to harm Plaintiff in Missouri. *See Carney*, 2018 WL 6524003 at \*7.

Despite Defendant claiming that *Wieland* is distinguishable, the Court finds that it is directly applicable. The district court in *Wieland* noted that the defendants in that case allegedly posted defamatory material on a website that could be accessed in the Eastern District of Missouri. 2010 WL 1528527 at \*1. Here, Defendant asserts that Plaintiff has not alleged that the emails were published in Missouri. However, just like the website in *Wieland*, the relevant point is that the emails could be accessed in the Eastern District of Missouri. A person publishes a defamatory statement by communicating it to a third person. *Gray v. AT & T Corp.*, 357 F.3d 763, 765-66 (8th Cir. 2004). Thus, an email accessed in this District is published here for purposes of defamation. *See Wieland*, 2010 WL 1528527 at \*1-\*2 (citing *Capital Corp. Merchant Banking, Inc. v. Corporate Colocation, Inc.*, 2008 WL 4058014, at \*2 (M.D. Fla. Aug. 27, 2008) ("Moreover, because the harm from an online defamatory statement can occur in any

16

place where the website or forum is viewed, no one forum should be expected to stand out as a particularly strong candidate for venue. Thus, in the context of defamation and other non-physical torts, courts generally hold that venue under section 1391(a)(2) is proper in the district where the injured party resides and the defamatory statements were published.")).

The district court in *Wieland* also found venue was proper because the plaintiff resided in this District and therefore any injuries resulting from the defamatory statements occurred in this District. *Id*. (citing *Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 622 (8th Cir. 2004) (noting that the "Missouri Supreme Court has stated that in a defamation case where there is widespread dissemination of the allegedly defamatory matter, such as there was via the internet in the case before us, the most important consideration in choosing the applicable law is the residence of the party allegedly defamed."). The Court accordingly finds that venue is proper under § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, the alleged defamatory statements could be accessed in this District, and Plaintiff's principal place of business is located in this District.

## IV.    Motion to Stay Discovery

Defendant has requested a stay of all discovery in this matter until the Court rules on Defendant's motion to dismiss. As this Court's order has resolved the motion to dismiss, the stated rationale for staying discovery no longer exists. Therefore, Defendant's motion to stay discovery will be denied as moot.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Muhammad Babar Chaudhry's motion to dismiss [ECF No. 46] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Muhammad Babar Chaudhry's motion to stay discovery pending ruling on motion to dismiss [ECF No. 49] is **DENIED as moot.**

Dated this 14th day of May, 2026.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE